FILED

1
2
3
4

ARSHAK BARTOUMIAN (SBN 210370)
OMNIA LEGAL, INC
124 W STOCKER ST STE B
GLENDALE, CA 91202
TEL. 818-532-9339
DISPUTES@OMNIALEGAL.ORG

2012 JUN -4  AM 11: 13

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY_____

Attorney for Plaintiff Tom S. Pokavat

5

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

Case No. **CV 12-4735 - GW (JCGx)**

TOM S POKAVAT, an individual,

   PLAINTIFF

Vs.

**VERIFIED COMPLAINT FOR DAMAGES**

10
11
12
13
14
15
16

NORTHLAND GROUP, INC, A Minnesota Corporation
SRA ASSOCIATES, INC A New Jersey Corporation
MRS BPO, LLC, A New Jersey Limited Liability Company
SUNRISE CREDIT SERVICES, INC A New York Corporation
REDLINE RECOVERY SERVICES, LLC A Georgia Limited Liability Company
ALLIANCEONE RECEIVABLES MANAGEMENT, INC, A Delaware Corporation
IC SYSTEM, INC, A Minnesota Corporation
   **DEFENDANTS.**

17
18
19
20
21
22
23
24
25
26
27
28

Now comes the Plaintiff, Tom S Pokavat, (hereinafter "Plaintiff") through his attorney on record Arshak Bartoumian and brings his Complaint against NORTHLAND GROUP, INC (hereinafter "NORTHLAND"), SRA ASSOCIATES, INC (hereinafter "SRA"), MRS BPO, LLC (hereinafter "MRS"), SUNRISE CREDIT SERVICES, INC (hereinafter "SUNRISE"), REDLINE RECOVERY SERVICES,  LLC (hereinafter "REDLINE"), ALLIANCEONE RECEIVABLES MANAGEMENT, INC (hereinafter "ALLIANCEONE") and IC SYSTEM, INC (hereinafter "IC") collectively known as DEFENDANTS, for violations of Fair Debt Collection Practices Act [15 U.S.C. §1692-1692p] ("FDCPA"), California's Rosenthal Fair Debt Collection Practices Act [California Civil Code §1788 et seq.] ("RFDCPA"), Fair Credit Reporting Act [15 U.S.C. §1681 et seq.] ("FCRA"), California's Consumer Credit Reporting Agencies Act [California Civil Code §1785.2 et seq.] ("CCRAA"), and for defamation by libel and invasion of privacy/false light, alleging as follows:

## PRELIMINARY STATEMENT

1. The FDCPA regulates the behavior of collection agencies attempting to collect a debt on behalf of another. The United States Congress has found abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors, and has determined that abusive debt collection practices contribute to a number of personal bankruptcies, marital instability, loss of jobs, and invasions of individual privacy. Congress enacted the FDCPA to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote uniform State action to protect consumers against debt collection abuses [15 U.S.C. §1692(a)-(e)].

2. The FDCPA is a strict liability statute, which provides for actual or statutory damages upon the showing of one violation. The Ninth Circuit has held that whether a debt collector's conduct violates the FDCPA should be judged from the standpoint of the "least sophisticated" consumer. [Baker v. G.C. Services Corp., 677 F.2d 775, 778 (9th Cir. 1982); Swanson v. Southern Oregon Credit Service, Inc. 869 F.2d 1222, 1227(9th Cir.1988)]. This objective standard "ensure[s] that the FDCPA protects all consumers, the gullible as well as the shrewd … the ignorant, the unthinking and the credulous." [Clomon v. Jackson, 988 F.2d 1314, 1318-19 (2nd Cir. 1993)].

3. To prohibit deceptive practices the FDCPA, at 15 U.S.C. §1692e, outlaws the use of false, deceptive, and misleading collection letters and names a non-exhaustive list of certain per se violations of false and deceptive collection conduct. 15 U.S.C. §1692e(1)-(16). To prohibit harassment and abuses by debt collectors, the FDCPA, at 15 U.S.C. §1692d, further provides that a debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt and names a non-exhaustive list of certain per se violations of harassing and abusive collection conduct. 15 U.S.C. §1692d(1)-(6).

4. The FDCPA also prohibits, at 15 U.S.C. §1692c, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a post judgment judicial remedy, communication by a debt collector in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

5. The RFDCPA regulates collection agencies and original creditors attempting to collect debts on their own behalf. The California legislature has determines that the banking and credit system and grantors of credit to consumers are dependent upon the collection of just and owing debts and that unfair or deceptive collection practices undermine the public confidence that is essential to the continued functioning of the banking and credit system and sound extensions of credit to consumers. The Legislature has further determined that there is a need to ensure that debt collectors exercise their responsibility with fairness, honesty, and due regard for the debtor's rights and that debt collectors must be prohibited from engaging in unfair or deceptive acts or practices.

6. Congress enacted the FCRA to establish consumer rights to privacy over their credit and financial information and to ensure the "[a]ccuracy and fairness of credit reporting." FCRA provides several protections for consumers, including but not limited to the right to be notified of any negative/unfavorable information reported in their name and the right to dispute inaccurate, outdated, incomplete or otherwise unfairly reported information on their credit file.

7. The FCRA, under CONGRESSIONAL FINDINGS AND STATEMENT OR PURPOSE, 15 U.S.C. §1681(a)(4) reads in relevant part:

8. *"There is a need to insure that consumer credit reporting agencies exercise their grave responsibilities with fairness, impartiality, and **a respect for the consumer's right to privacy.**"* (Emphasis added.)

9. The FCRA, under CONGRESSIONAL FINDINGS AND STATEMENT OF PRUPOSE, 15 U.S.C. §1681(b) reads in relevant part;

10. *"Reasonable procedures. It is the purpose of this title to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable* **to the consumer** *with regard to the* **confidentiality,** *accuracy, relevancy, and proper utilization of such information in accordance with the requirements of this title."* (Emphasis added.)

11. The statute governing "permissible purposes of consumer reports," FCRA 15 U.S.C. §1681b, provides in pertinent part:

12. *"(a) In general. Subject to subsection (c) of this section, any consumer reporting agency may furnish a consumer report under the following circumstances* **and no other:"** (Emphasis added.)

13. Thus, the strictly limited provisions set forth in section 1681b operate to support the **confidentiality** of consumer reports by limiting their dissemination.

14. FCRA regulates credit reporting agencies as well as creditors, collection agencies and other parties who provide information to credit reporting agencies and/or obtain and use the consumer credit reports. FCRA Section 604, 15 U.S.C. §1681b, identifies the permissible purposes allowed under the act for conducting credit reviews on consumers.

15. FCRA Sections 616 and 617, 15 U.S.C. §1681n and §1681o, create private right of action consumers can bring against violators of any provision of the FCRA with regards to their credit. In DiMezza v. First USA Bank, Inc., supra, the court confirmed that "[...] the plain language of [CRA Sections 616 and 617, 15 U.S.C. §1681n and §1681o] provide a private right of action for a consumer against furnishers of information who have willfully or negligently failed to perform their duties upon notice of a dispute. [...] there is a private right of action for consumers to enforce the investigation and reporting duties imposed on furnishers of information."

16. CCRAA was implemented to protect the credit information of California consumers. CCRAA also regulates consumer credit reporting agencies and furnishers of information with respect to personal, credit and other financial

information submitted and maintained in their credit file. CCRAA in California Civil Code §1785.25-1785.26 refrains furnishers of information from reporting information that they know or should have known was erroneous, and obligates furnishers to cease credit reporting of information disputed by consumers without notice of such dispute.

17.     Similar to FCRA Section 604, 15 U.S.C. §1681b, California Civil Code §1785.11 identifies the lawful reasons that would allow for a credit review on any given consumer.

18.     CCRAA provides consumers with the right to be informed of negative credit reporting and the right to dispute information in their credit reports, which they believe is incomplete and/or inaccurate. Consumers also have the right to bring civil action against violators of any provision of the CCRAA with respect to their rights and their credit, and to seek monetary damages. California Civil Code §1785.19 and §1785.31.

19.     *Sanai v. Saltz, et al.*, 2009 Cal. App. LEXIS 83 (Cal. App. 2d Dist. Jan. 26, 2009) established that consumers may replead their FCRA claims as violations of the CCRAA and that the state claims are not preempted by FCRA. In further support, courts have uniformly rejected creditors' and consumer reporting agencies' arguments that the FCRA bars state law claims. See Sehl v. Safari Motor Coaches, Inc., 2001 U.S. Dist. Lexis 12638 (U.S.D.C. N.D. Cal. 2001)(for detailed discussion); Harper v. TRW, 881F. Supp. 294 (U.S.D.C. S.D. Mich. 1995); Rule v. Ford Receivables, 36 F. Supp.2d 335 (U.S.D.C. S.D. Va. 1999); Watkins v. Trans Union, 118 F. Supp.2d 1217 (U.S.D.C. N.D. Ala. 2000); Swecker v. Trans Union, 31 F. Supp.2d 536 (U.S.D.C. E.D. Va. 1998); Saia v. Universal Card Svc., 2000 U.S.Dist.Lexis 9494, 2000 Westlaw 863979 (U.S.D.C. E.D. La. 2000); Sherron v. Private Issue by Discover, 977 F. Supp.2d 804 (U.S.D.C. N.D. Miss. 1997); Hughes v. Fidelity Bank, 709 F. Supp.2d 639 (U.S.D.C. E.D. Pa. 1989).

## JURSDICTION, VENUE, AND DEMAND FOR JURY TRIAL

1.    Jurisdiction of this court arises pursuant to *15 U.S.C. §1962k(d)*, which states that such actions may be brought and heard before "any appropriate United States district court without regard to the amount in controversy." This Court also has jurisdiction of the federal claims asserted pursuant to 28 U.S.C. §1331 and supplemental jurisdiction of the state law claims asserted pursuant to 28 U.S.C. §1367(a).

2.    Defendant regularly conducts business in the state of California, and therefore, personal jurisdiction is established.

3.    Venue is proper in this district pursuant to 28 U.S.C. §1391 because Defendant conducts business in this district and many of the events occurred in this district. Further, Plaintiff resides in this district.

4.    Pursuant to Rule 38(b) of the Federal Rules of Civil Procedures, Plaintiff hereby demands a jury trial on any and all issues qualified for a jury trial.

## PRIVATE RIGHT OF REMEDY

20.    15 U.S.C §1692k(a) states that "… any debt collector who fails to comply with any provision of this title with respect to any person is liable to such person in an amount equal to the sum of-."

21.    Cal. Civ. Code §1788.30(a) states that "any debt collector who violates this title with respect to any debtor shall be liable to that debtor only in an individual action…"

22.    15 U.S.C. §1681n and §1681o refer to consumers' ability to bring civil liability action against users/furnishers of information for willful and negligent noncompliance respectively, with regards to any provision of the FCRA.

23.    *Gorman v. MBNA America Bank, N.A., No. 06-17226* further established that consumers are entitled to a Private Remedy against Furnishers for noncompliance with their obligations enforced under FCRA §1681s-2(b).

24.    California Civil Code §1785.15(f) states that consumers "have a right to bring civil action against anyone […], who improperly obtains access to a file, knowingly or willfully misuses file data, or fails to correct inaccurate file data" concerning a consumer's credit report.

25. California Civil Code §1785.31(a) states that Plaintiff as "any consumer who suffers damages as a result of a violation of this title by any person may bring an action in a court of appropriate jurisdiction against that person to recover the following."

## PARTIES

5. Plaintiff is an individual, and at all times relevant herein, was a resident of Los Angeles County, California.

6. Plaintiff is a consumer as defined in 15 U.S.C. §1681a (c) and California Civil Code §1785.3(b).

7. "NORTHLAND" is a Minnesota Corporation.

8. "SRA" is a New Jersey Corporation.

9. "MRS" is a New Jersey Limited Liability Company.

10. "SUNRISE" is a New York Corporation.

11. "REDLINE" is a Georgia Limited Liability Company.

12. "ALLIANCEONE" is a Delaware Corporation.

13. "IC" is a Minnesota Corporation.

14. Defendants regularly conduct business in the State of California.

15. Defendants are debt collectors as defined in *15 U.S.C. §1692a(6)*and *Cal. Civ. Code §1788.2(c)*.

16. Defendants are persons as defined in 15 U.S.C. §1681a (b) and California Civil Code §1785.3(j).

17. Whenever this complaint alleges that any defendant did any act or thing, it is meant that it, it's directors, officers, agents, employees, or the directors, agents or employees of its subsidiaries, performed or participated in such act or thing, and in each instance that such act or thing was authorized or ratified by, and done on behalf of and under the direct control of that defendant.

26. Plaintiff is informed and believes and on that basis alleges that Defendant is responsible for the acts, occurrences and transactions as officers, directors or managing agents of Defendant or as its agents, servants, employees and/or joint venturers and as set forth in this Complaint, and that each of them is legally liable to

Plaintiff, as set forth below and herein:

a.   Said Officers, directors or managing agents of Defendant personally acted willfully with respect to the matters alleged in this Complaint;

b.   Said Officers, directors or managing agents of Defendant personally authorized, approved of, adopted and/or ratified the acts alleged herein or the agents, servants, employees and/or joint venturers of Defendant did so act;

c.   Said Officers, directors or managing agents of Defendant personally participated in the acts alleged herein of Defendant;

d.   Said Officers, directors or managing agents of Defendant personally had close supervision of their agents, servants, employees and/or joint venturers of Defendant;

e.   Said Officers, directors or managing agents of Defendant personally were familiar with the facts regarding the matters alleged herein;

f.   Said Officers, directors or managing agents of Defendant personally failed to investigate the circumstances appertaining to the acts alleged herein. They also failed and refused to repudiate the herein alleged actions and failed to redress the harm done to Plaintiff. Further, said Officers, directors, or managing agents of Defendant failed and refused to punish or discharged the said agents, servants, employees and/or joint venturers of Defendant, even after learning of the acts of the agents, servants, employees and/or joint venturers of Defendant.

27.   Defendant is liable to Plaintiff for the relief prayed for in this Complaint, and any future amended complaint. Further, Plaintiff alleges that each act alleged herein, whether by a named Defendant was expressly authorized or ratified.


**FACTUAL ALLEGATIONS**

1.   Plaintiff who is not a minor alleges that the foregoing events, starting from date of discover of the credit inquiries made by Defendants, which are the subject to this complaint, occurred within the past one year.

2.   In or around December 2011 Plaintiff obtained his credit bureau reports from CRAs and was shocked to find that his personal financial and credits information were pulled and reviewed by "NORTHLAND" on August 30, 2011, by "SRA" on March 7, 2011, by

"MRS" on February 14, 2011, by "SUNRISE" on January 21, 2011, by "REDLINE" on August 21, 2010, by "ALLIANCEONE" on August 3, 2010, by "IC" on June 4, 2010 and May 7, 2010, all without Plaintiff's knowledge and authorizations.

3.   Upon research and review of companies profiles available online, Plaintiff learned that Defendants are a collection agencies that are in the business of collecting consumer debts.

4.   Upon information and belief, at some point Defendants must have tried to purchase debts alleged to be owed by Plaintiff, considered purchasing debts alleged to be owed by Plaintiff, or looked into Plaintiff's history as a potential debtor for overdue and unsatisfied account balances to collect on. At no point prior to the credit reviews did Plaintiff know of any such debts confirmed or alleged by Defendants to be the responsibility of Plaintiff.

5.   Defendants violated 15 U.S.C. §1681 by running credit inquiries into Plaintiff's consumer credit reports maintained by and with one or more of the three major credit reporting agencies, Experian, Equifax and Transunion (hereinafter "CRAs"), without Plaintiff's knowledge and authorization, and without having permissible purposes for conducting a credit reviews as defined under §1681b of the above cited title.

6.   Specifically, by "NORTHLAND" on August 30, 2011, by "SRA" on March 7, 2011, by "MRS" on February 14, 2011, by "SUNRISE" on January 21, 2011, by "REDLINE" on August 21, 2010, by "ALLIANCEONE" on August 3, 2010, by "IC" on June 4, 2010 and May 7, 2010. Defendants violated 15 U.S.C. §1681, by pulling Plaintiff's consumer credit reports, without the knowledge or consent of Plaintiff. Plaintiff had not requested reports from Defendants for purpose of extending credit, employment, insurance underwriting, or any other purposes that are allowed under this section. Defendants' credit reviews resulted in credit inquiries, which are reflecting on Plaintiff's credit reports until today.

28. At or about the time Defendants initiated the credit pulls of Plaintiff's consumer report:

a.   Plaintiff did not authorize consumer reporting agency to furnish his consumer report to Defendants.

b.  Plaintiff did not authorize Defendants to obtain his consumer reports from consumer reporting agencies.

c.  Plaintiff did not apply for any credit, loans or services with Defendants.

d.  Plaintiff did not have any contractual relationship for credit, loans or services with Defendants.

e.  Plaintiff did not owe any debts to any of Defendants.

f.  Plaintiff did now owe any debt as the result of a judgment to any of Defendants.

g.  Plaintiff did not apply for any employment with Defendants.

h.  Plaintiff did not apply for any insurance from Defendants.

i.  Plaintiff did not have any existing account(s) within the meaning the Electronic Fund Transfer Act ("EFTA") §903(2), pursuant 15 U.S.C. §1681a(f)(4). "the term '*account*' means a demand deposit, savings deposit, or other asset account (other than an occasional or incidental credit balance in an 'open end credit plan' as defined in section 1602(i) of this title), as described in regulations of the Board, established primarily for personal, family, or household purposes, but such term does not include an account held by a financial institution pursuant to a bona fide trust agreement." (Emphasis added) "the terms '*open end credit plan*' and '*open end consumer credit plan*' mean a plan under which the creditor reasonably contemplates repeated transactions, which prescribes the terms of such transactions, and which provides for a finance charge which may be computed from time to time on the outstanding unpaid balance." (Emphasis added) or credit obligation with Defendants.

j.  Plaintiff did not have any jurisdiction issued any order to credit reporting agencies to furnish Plaintiff's consumer report to Defendants.

k.  No head of State or local child support enforcement agency requested credit reporting agencies to provide Plaintiff's consumer reports to Defendants.

l.  No agency administering a State plan under Section 454 of the Social Security Act (42 U.S.C. Section 654) requested credit reporting agencies to provide Plaintiff's consumer report to Defendants.

m. Plaintiff did not apply for any license or other benefit granted by a government instrumentality through Defendants.

n.  Plaintiff did not receive any "firm offer of credit or insurance" from Defendants.

7.  Defendants violated 15 U.S.C. §1681 by ignoring Plaintiff's written disputes and requests for proof that the credit inquiries were run for a purpose recognized by law.

8.    Defendants conducted the above described credit reviews of Plaintiff's records without communicating to him of any debts and confirming the validity of any such alleged debts, even if such alleged debts did exist and were in their possession for collections.

9.    On or about December, 2011 Plaintiff sent letters to each credit reporting agency, addressing the unauthorized credit reviews and requesting deletion of the credit inquiries from Plaintiff's credit files, unless Defendants could provide and support a justifiable purpose for conducting the disputed credit reviews.

10.   On or about December 09, 2011 Plaintiff sent letters to each individual defendants requesting their permissible purposes per FCRA.

11.   Defendants failed to answer Plaintiff's request and failed to delete the credit inquiries to avoid further damage to Plaintiff's credit records.

12.   On or about January 13, 2012 and February 13, 2012 Plaintiff sent a follow up letters to Defendants, addressing their failure to respond or take appropriate corrective action with respect to Plaintiff's initial of disputes and detailed of notice of all their violations.

13.   To date, after multiple correspondences, Defendants still continues to maintain the record of unauthorized credit inquiries on Plaintiff's credit records.

14.   As a result of Defendants' conduct, Plaintiff has suffered:

    a.   Actual damages and serious financial harm arising from monetary losses relating to denials to new credit, loss of use of funds, loss of credit and loan opportunities, excessive and/or elevated interest rate and finance charges;

    b.   Out of pocket expenses associated with communicating with Defendant, disputing the unauthorized credit inquiry, as well as consultation fees paid to attorneys and other professionals to obtain information and advice about consumer rights credit reporting and use;

    c.   Emotional distress and mental anguish associated with having his credit information unlawfully reviewed and having derogatory information transmitted about Plaintiff to other people both known and unknown;

    d.   Decreased credit score and creditworthiness, which may result in inability to obtain credit, employment or housing on future attempts.